UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GENOPSGROUP LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 14-0893 (ESH) |
| PUBLIC HOUSE INVESTMENTS LLC, and PUBLIC IRISH PUB LLC | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff GenopsGroup LLC ("Genops") has sued defendants Public House Investments, LLC ("PHI") and Public Irish Pub, LLC ("PIP") for their alleged failure pay plaintiff under two separate contracts for the build-out of the storefront and interior of a restaurant in National Harbor, Maryland. The defendants removed the case to federal court (Notice of Removal, May 27, 2014 [Dkt. No. 1]) and have filed a motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. (Mot., May 27, 2014 [Dkt. No. 4].) For the following reasons, the Court will grant plaintiff's motion in part, dismiss plaintiff's claim against PIP for failure to state a claim, and remand plaintiff's claim against PHI to the District of Columbia Superior Court.

## BACKGROUND

Plaintiff entered into two separate contracts—one with each defendant—from which plaintiff's breach of contract claims arise. On October 7, 2010, plaintiff entered into a contract with PHI to build a restaurant storefront in National Harbor, Maryland. (Compl., March 13,

2014 [Dkt. No. 1] ¶ 5; Contractor Agreement between PHI and Genops ("PHI Contract"), October 2010 [Dkt. No. 7-2] at 1.) Under the contract, PHI was to pay plaintiff $124,610 for its completion of the storefront. (Compl. ¶ 6.) Although plaintiff completed the storefront in accordance with the contract terms, and PHI has paid plaintiff for a portion of its work, PHI still owes plaintiff $34,610 under the contract. (*Id.* ¶¶ 7-9.)

On October 21, 2010, plaintiff entered into a contract with PIP to build-out the interior of a restaurant in National Harbor, Maryland. (Compl. ¶ 10; Abbreviated Standard Form of Agreement Between PIP and Genops with Stipulated Sum ("PIP Contract"), Oct. 21, 2010 [Dkt. No. 4-2] at 1.) Under the contract, PIP was to pay plaintiff $557,000 for its build-out of the restaurant interior. (Compl. ¶ 11.) Plaintiff completed its buildout of the interior in accordance with the contract terms. (*Id.* ¶ 12.) The contract contained a stipulation providing that "if, within one year after the date of Substantial Completion of the Work . . . any of the Work is found to be not in accordance with the requirements of the Contract Documents, the Contractor shall correct it promptly after receipt of written notice from the Owner . . . ." (PIP Contract § 17.2.) PIP never notified plaintiff of any work that failed to meet the specifications of the contract. (Compl. ¶ 13.) Although PIP has paid plaintiff for some of its work, PIP still owes plaintiff a balance of $122,823 under the contract. (*Id.* ¶ 14.)

The PIP Contract provides, *inter alia*, that "[c]laims, disputes, and other matters in question arising out of or relating to this Contract . . . . shall . . . be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party." (PIP Contract § 9.10.1.) It also states that "[b]y mutual consent, the parties may endeavor to resolve their disputes by mediation . . . ." (*Id.* § 9.10.3.) On March 18, 2012, plaintiff sent a letter to PIP stating that, under the "mutual consent" clause in § 9.10.3, it

2

"decline[d] mediation or arbitration" and intended "to enforce the contract by litigation." (Notice of Intent to Commence Litigation and Opposition to Mediation or Arbitration ("Notice"), March 18, 2012 [Dkt. No. 7-1] at 1.)

Nearly two years later, on March 13, 2014, plaintiff filed this action in the Superior Court of the District of Columbia, alleging breach of contract against each defendant under their respective contracts. On May 27, 2014, defendants removed the case to this Court on the basis of diversity jurisdiction. (Notice of Removal at 4.) Defendants now move to dismiss the case and enforce a "mandatory mediation provision" in PIP Contract § 9.10.1. (Def.'s Mem. of P. & A. in Support of Mot. to Dismiss, May 27, 2014 [Dkt. No. 4-1] at 1-2.)

## ANALYSIS

### I. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), courts must assume the veracity of all "well-pleaded factual allegations" contained in the complaint and draw all reasonable inferences in plaintiff's favor. *Iqbal*, 556 U.S. at 678-79; *see also Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). In so doing, a court is not limited to the facts alleged in the complaint, but also may consider documents attached to or incorporated by reference in the complaint, matters about which the court may take judicial notice, and any documents appended to a motion to dismiss whose authenticity is not disputed if they are referred to in the complaint and are integral to a claim. *U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 24 (D.D.C. 2010); *see also* Fed. R. Civ. P. 10(c).

## II. SUBJECT MATTER JURISDICTION

"'It is axiomatic that subject matter jurisdiction may not be waived, and that courts may raise the issue *sua sponte.*'" *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008) (quoting *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 992 (D.C. Cir. 1982)). Indeed, before proceeding to the merits, the Court *must* first assure itself that it has subject matter jurisdiction over plaintiff's motion. *Id.* Because plaintiff only brings state-law breach of contract claims against the defendants, the Court's subject matter jurisdiction must rest, if at all, on diversity of citizenship under 28 U.S.C. § 1332. Further, because defendants removed this action to federal court, they have the burden of establishing jurisdiction. *See Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 100 (D.D.C. 2008).

A federal court has diversity jurisdiction when (1) there is complete diversity of citizenship among the parties (that is, no plaintiff is a citizen of the same state as any defendant) and (2) the "amount in controversy" is greater than $75,000. *See* 28 U.S.C. § 1332(a). The parties agree, and there is no evidence to the contrary, that complete diversity of citizenship exists among the parties. (*See* Compl. ¶¶ 2-4; Notice of Removal at 2-4.) Moreover, it is clear that plaintiff's breach of contract claim against PIP for $ 122,823 satisfies the amount-in-controversy requirement. (Compl. ¶ 14.) However, plaintiff's breach of contract claim against PHI for $34,610 falls short of the $75,000 amount-in-controversy requirement. (Compl. ¶ 9.) Thus, whether the Court's has original jurisdiction over plaintiff's claim against PHI depends on whether the damages sought for that claim may be aggregated with the damages sought for plaintiff's claim against PIP.

4

"When calculating the amount in controversy for purposes of this statute, it is well-established that 'the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement.'" *Nat'l Consumers League v. Flowers Bakeries, LLC*, -- F. Supp. 2d ---, 2014 WL 1372642 at *3 (D.D.C. Apr. 8, 2014) (quoting *Snyder v. Harris,* 394 U.S. 332, 335 (1969)); *accord Georgiades v. Martin–Trigona*, 729 F.2d 831, 833 (D.C. Cir. 1984) ("Separate and distinct claims, regardless of whether they share a community of interest or originate in a single transaction or event, may not be aggregated to satisfy the jurisdictional amount-in-controversy requirement"). The same principle applies to diversity cases involving one plaintiff and two or more defendants, but with a twist: claims against multiple defendants can be aggregated only when the defendants are jointly liable to the plaintiff. *See Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001); *State Farm Mut. Auto. Ins. Co. v. A & J Med. Ctr.*, -- F. Supp. 2d ---, 2014 WL 2025799 at *3 (S.D. Fla. May 15, 2014); *Cronin v. State Farm Lloyds*, 2008 WL 4649653 at *4 (S.D. Tex. Oct. 10, 2008); *see also* 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3704, at 138-41 (3d ed. 1998) ("[T]he cases are quite clear and virtually unanimous that separate and distinct claims by different plaintiffs still cannot be aggregated for purposes of measuring the amount in controversy. The same rule applies when suit is brought by a single plaintiff against multiple defendants.").

In this case, defendants have not suggested—let alone demonstrated—that they are jointly liable for plaintiff's separate and distinct claims. Defendants are limited liability companies that are wholly owned by different members and share no other indicia of corporate relationship. (*See* Notice of Removal at 3-4). Further, plaintiff does not seek to hold defendants jointly liable. Indeed, plaintiff's claims arise out of separate contracts for the performance of

different types of work, and neither defendant co-signed the other's contract to guarantee its performance. (Compl. ¶¶ 5-14; PIP Contract at 2, 17; PHI Contract at 1, 4.) Because defendants have failed to demonstrate that they would be jointly liable for the claims brought in this action, the Court concludes that it lacks diversity jurisdiction over plaintiff's claim against PHI. Therefore, if the Court exercises jurisdiction over plaintiff's claim against PHI, it may only do so on the basis of supplemental jurisdiction under 28 U.S.C. § 1367.

## III. MERITS

Under D.C. common law, "'the written language embodying the terms of an agreement will govern the rights and liabilities of the parties regardless of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite meaning.'" *Aziken v. Dist. of Columbia*, 70 A.3d 213, 218-19 (D.C. 2013) (quoting *Hartford Fin. Servs. Group v. Hand*, 30 A.3d 180, 187 n.12 (D.C. 2011)). When interpreting a contract, the Court must "strive to give reasonable effect to all its parts and eschew an interpretation that would render part of it meaningless or incompatible with the contract as a whole." *Dist. of Columbia v. Young*, 39 A.3d 36, 40 (D.C. 2012) (internal quotation marks omitted). Moreover, courts "apply a familiar principle of contract interpretation, that 'specific terms and exact terms are given greater weight than general language.'" *Washington Auto. Co. v. 1828 L St. Assocs.*, 906 A.2d 869, 880 (D.C. 2006) (quoting Restatement (Second) of Contracts § 203(c) (1981)). "[W]here both the specific and general provisions may be given reasonable effect, both are to be retained." *Ohio Power Co. v. FERC*, 744 F.2d 162, 168 n.7 (D.C. Cir. 1984). However, where they "stand irreconcilably in conflict[,]" "specific clauses prevail over general clauses[.]" *Id.*

PIP seeks to dismiss plaintiff's breach of contract claim for its failure to pursue mediation prior to litigation in accord with PIP Contract § 9.10.1. (Mot. at 1-2, 5-7.)[1] PIP Contract § 9.10.1 requires that "[c]laims, disputes, and other matters in question arising out of or relating to this Contract . . . . shall . . . be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party." (PIP Contract § 9.10.1.) This provision unambiguously requires mediation before a party may file suit. Indeed, courts dealing with this precise language have struggled "to imagine language which more plainly states that the parties intended to establish mediation as a condition precedent to [litigation] proceedings." *HIM Portland, LLC v. DeVito Builders, Inc.*, 317 F.3d 41, 44 (1st Cir. 2003); *see also Golden State Foods Corp. v. Columbia/Okura LLC*, 2014 WL 2931127 at *6 (C.D. Cal. June 26, 2014) ("The language of the AIA Agreement could not be more clear: mediation is a condition precedent to arbitration . . . . One can scarcely imagine clearer language on this point."). It is undisputed that plaintiff's claim against PIP arose out of or is related to the PIP Contract. Thus, the mandatory mediation provision in section 9.10.1 applies to plaintiff's claim against PIP.

Plaintiff argues, however, that it did not need to pursue mediation because it formally "decline[d] mediation" pursuant to PIP Contract § 9.10.3. (Pls.' Opp'n to Defs.' Mot. to Dismiss, July 31, 2014 [Dkt. No. 7] at 3; Notice at 1.) PIP Contract § 9.10.3 provides that "[b]y mutual consent, the parties *may endeavor* to resolve their disputes by mediation . . . ." (PIP Contract § 9.10.3 (emphasis added)). Plaintiff apparently reads section 9.10.3's permissive

---

[1] In their motion, defendants seek to dismiss *both* of plaintiff's claims under the "mandatory mediation provision" in the PIP Contract. (*See* Mot. at 1-2, 8-9.) Although the Court need not reach this issue because it lacks original jurisdiction over plaintiff's claims against PHI, it is arguable whether PHI can rely on the mandatory mediation provision in the PIP Contract. PHI and PIP are distinct entities, PHI is not a party to the PIP contract, and plaintiff's claim against PHI is based on a distinct contract that does not have a similar mandatory mediation provision.

language as making mediation merely optional. (Opp'n at 3-4.) While plaintiff is correct that section 9.10.3, when read in isolation, *suggests* that mediation is optional, its language cannot undermine the *unequivocal requirement* set forth in section 9.10.1: "[c]laims . . . arising out of or relating to this Contract . . . . *shall* . . . be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party." (PIP Contract § 9.10.3 (emphasis added).) Indeed, plaintiffs' interpretation of the PIP Contract reads the operative word "shall" completely out of section 9.10.1. *See Thermal Dynamics Int'l, Inc. v. Safe Haven Enters.*, 952 F. Supp. 2d 143, 149 (D.D.C. 2013). The Court must strive to give effect to both section 9.10.1 and section 9.10.3 of the PIP Contract. The only way to do so in this case is to hold that the specific and mandatory language of section 9.10.1 controls over the general and permissive language in section 9.10.3. *See HIM Portland*, 317 F.3d at 44 (holding that provision similar to PIP Contract § 9.10.3 did not undermine the clear requirement elsewhere that claims "shall . . . be subject to mediation as a condition precedent to arbitration or the institution of legal . . . proceedings").

The PIP Contract therefore required plaintiff to submit its claim against PIP to mediation as a condition precedent to pursuing litigation. The PIP Contract did not allow plaintiff to—as it did here—simply "decline mediation" and proceed directly with litigation. "The failure to mediate . . . a contract that makes mediation . . . a condition precedent to filing a lawsuit has been held to warrant dismissal." *Golden State Foods Corp.*, 2014 WL 2931127 at *7 (collecting cases); *see also Tattoo Art, Inc. v. Tat Int'l, LLC*, 711 F. Supp. 2d 645, 651 (E.D. Va. 2010). Therefore, because plaintiff did not submit its claim against PIP to mediation prior to filing this suit, the Court will dismiss the claim without prejudice. *See Tattoo Art*, 711 F. Supp. 2d at 652.

## IV. SUPPLEMENTAL JURISDICTION

When, as here, the state-law claim providing the Court with diversity jurisdiction has been dismissed, the Court "may decline to exercise supplemental jurisdiction" over the remaining state-law claims. 28 U.S.C. § 1367(c)(3). In deciding "whether to exercise jurisdiction," the Court "should consider and weigh . . . the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "[I]n the usual case . . . the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7.

The Court concludes this is a "usual case." Therefore, in light of the dismissal of plaintiff's claim against PIP, there is no reason for the Court to retain jurisdiction over plaintiff's separate claim against PHI that fails to independently satisfy the requirements for diversity jurisdiction.[2] The Court will therefore remand plaintiff's breach of contract claim against PHI to District of Columbia Superior Court.

## CONCLUSION

For these foregoing reasons, the Court will grant plaintiff's motion to dismiss [Dkt. No. 4] in part, dismiss plaintiff's claim against Public Irish Pub without prejudice, and remand plaintiff's claim against Public House Investments to District of Columbia Superior Court. An Order consistent with this Memorandum Opinion will be filed on this day.

---

[2] Indeed, the Court questions whether plaintiff's two contract claims, concerning distinct contracts, with distinct defendants, for the performance of (according to the complaint) distinct work, even derive from a "common nucleus of operative fact," *see United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), necessary for the Court to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); *see also Wisey's # 1 LLC v. Nimellis Pizzeria LLC*, 952 F. Supp. 2d 184, 191 (D.D.C. 2013) ("loose factual connection" among claims is insufficient if the "factual connection" does not pertain to the claims' operative facts).

/s/    *Ellen Segal Huvelle*  
					ELLEN SEGAL HUVELLE  
					United States District Judge

Date:   September 16, 2014